# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**EZETTE WEATHERS**                                                                                **PLAINTIFF**

v.                               **No. 5:16-CV-00341-DPM-PSH**

**NANCY A. BERRYHILL,**
Acting Commissioner,
Social Security Administration                                             **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Ezette Weathers applied for social security disability benefits with an alleged disability onset date of January 30, 2007. (R. at 75). After a hearing, the administrative law judge (ALJ) denied her application. (R. at 36). The Appeals Council denied Weathers' request for review. (R. at 4). The ALJ's decision now stands as the Commissioner's final decision, and Weathers has requested judicial review.

For the reasons stated below, the magistrate judge recommends reversing and remanding the Commissioner's decision.

## I. The Commissioner's Decision

The ALJ found that Weathers had the severe impairments of mild disk protrusion at C5–C6 with minimal hypertrophy at that level and some minimal hypertrophic changes of the facet, with only some slight disk desiccation at L3–L4, and with only minimal degenerative changes of the facet joint at that level. (R. at 15). The ALJ specifically found that Weathers had no severe mental impairment. (R. at 16–22). The ALJ found that Weathers had the residual functional capacity (RFC) to perform the full range of medium work. (R. at 22). The ALJ then found that Weathers could perform her past relevant work as a chicken packer/hand packer. (R. at 35). Therefore, the ALJ held that Weathers was not disabled. (R. at 36).

## II. Summary of Medical Evidence

Weathers was seen at the Dallas County Medical Center on January 28, 2007 following a motor vehicle accident. (R. at 299). She was diagnosed with acute cervical strain and abdominal contusion. (R. at 299). She had an x-ray that identified straightening of the cervical spine and degenerative osteophytes at C5–C6. (R. at 302). She was treated with Flexeril and Toradol and prescribed Flexeril and ibuprofen. (R. at 308). The next day, she saw her physician, Neema Suphan, M.D., who advised bed rest and physical therapy three times per week for her neck and back. (R. at 315). On February 1, 2007, Weathers presented for physical therapy where she was found to have slow, guarded movements due to pain, but with lower extremity strength and range of motion within functional limits. (R. at 316). Her cervical range of motion was decreased approximately fifty percent, and she had reduced range of motion in the upper extremities due to pain. (R. at 316). She continued in physical therapy and met all goals,

including restoring cervical range of motion to functional limits, on April 5, 2007. (R. at 318).

Weathers was referred to Reza Shahim, M.D. and complained of neck and back pain radiating into her shoulders and hips on June 11, 2007. (R. at 336). Dr. Shahim reviewed Weathers' records and found mild cervical spondylosis at C5–C6. (R. at 336). Dr. Shahim did not recommend surgery and referred Weathers for pain management. (R. at 336). On July 13, 2007, Thomas Hart, M.D. reviewed an MRI of Weathers' spine that showed straightening of the cervical lordosis, mild disk protrusion at C5–C6, and slight disk desiccation, minimal bulge, and minimal degenerative changes of the facet joint at L3–L4. (R. at 340–41). Dr. Hart recommended diagnostic cervical facet injections at C3–C4, C4–C5, C5–C6, and C6–C7 and suggested consideration of radiofrequency. (R. at 341). Dr. Hart performed the injections on July 18, 2007. (R. at 348). After the procedure, Weathers claimed a pain score of 10/10 but appeared to not be in severe distress. (R. at 348). Dr. Hart noted that Weathers seemed not to understand the visual analog score and that it was difficult to get a score or subjective pain rating. (R. at 348).

Weathers saw Amir Qureshi, M.D. on September 6, 2007, complaining that her pain had increased after the facet injections. (R. at 333). Dr. Qureshi noted decreased range of motion at all points in Weathers' neck and tenderness over her cervical paraspinous muscles, bilateral lumbar paraspinous muscles, mid-spinous processes area, and bilateral SI joints. (R. at 334). Dr. Qureshi gave Weathers trigger point injections and a cervical epidural injection. (R. at 334–35). During a follow-up visit on October 4, 2007, Weathers reported that she had experienced relief for a few days but that her pain was currently 9 out of 10. (R. at 331). Dr. Qureshi's diagnosis was

unchanged, and he repeated the epidural injections and prescribed Ultram. (R. at 332). She received additional injections on November 5, 2007. (R. at 342). She continued to complain of pain and received additional epidural injections on February 28, 2008. (R. at 329). On April 24, 2008, Weathers stated that her pain level was 2 out of 10, and Dr. Qureshi released her to go back to work. (R. at 327–28).

Weathers presented to Charles Jones, M.D. on June 6, 2011 complaining of bilateral shoulder, bilateral neck, and back pain. (R. at 351). Dr. Jones assessed lumbago and cervical neck pain and prescribed Ultram and Flexeril. (R. at 352). She saw Dr. Jones again on December 7, 2011 with the additional complaint of ear pain when eating. (R. at 378). On December 27, 2011, Dr. Jones assessed myalgia and myositis in addition to the neck and back pain. (R. at 376–77). Dr. Jones continued to treat Weathers with pain medication, and she presented with TMJ pain on January 27, 2012. (R. at 375–76). Dr. Jones referred her to Stephen Shorts, M.D. in February 2012, and Dr. Shorts recommended that Weathers see a dentist to see if the TMJ pain could be reduced. (R. at 385).

Weathers saw Efrain Segura, M.D. for a consultative examination on December 9, 2011. (R. at 357–62). Dr. Segura diagnosed neck, shoulder, and lower back pain and opined that Weathers had mild limitations in her ability to walk, lift, and carry and that she needed more investigation concerning her back, shoulders, and lower back pain. (R. at 360).

State Agency physician Stephen Whaley, M.D. reviewed Weathers' medical records and opined that she could perform light work. (R. at 366–73).

Following the administrative hearing, Weathers presented for additional consultative examinations. Bernard Crowell, M.D. examined Weathers on May 21, 2013,

finding reduced lumbar flexion, extension, and lateral flexion and reduced shoulder abduction, forward elevation, internal rotation, and external rotation. (R. at 430). Dr. Crowell opined that Weathers could occasionally lift up to twenty pounds; sit for eight hours in an eight-hour workday; frequently grasp, perform fine manipulation, handle, feel, and operate hand and foot controls; occasionally reach, climb, balance, stoop, and crouch; and never kneel or crawl. (R. at 431). His impression was chronic pain syndrome of the lower back with bilateral shoulder pain that could be rotator cuff tendinitis and tendinopathy. (R. at 433).

Weathers underwent a mental diagnostic evaluation and intellectual assessment with Charles Spellman, Ph.D. on May 22, 2013. (R. at 420–25, 434–37). Dr. Spellman found that Weathers had a full scale IQ of 50, but he did not consider the test results reliable, based on Weathers' communication and ability to hold a job for nine years. However, Dr. Spellman believed that Weathers might have borderline intelligence. (R. at 422). He diagnosed adjustment disorder with mixed emotional features, dependent personality disorder, and rule-in borderline intelligence. (R. at 423). In a medical source statement, Dr. Spellman indicated that Weathers had mild limitations in her ability to understand and remember simple instructions and carry out simple instructions; moderate limitations in the ability to make judgments on simple work-related decisions, understand and remember complex instructions, and carry out complex instructions; and marked limitations in the ability to make judgments on complex work-related decisions. (R. at 435). He also indicated that Weathers had mild limitations in her ability to interact appropriately with supervisors and coworkers and her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 436).

## III. Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Weathers argues that the ALJ failed to properly assess her mental impairments, failed to perform a proper credibility analysis, and erred in assessing her RFC. As the undersigned finds that the ALJ failed to properly assess Weathers' mental impairments, it is not necessary to reach her other arguments.

Weathers contends that the ALJ failed to consider educational records that show she performed poorly in school, required special education classes, and ultimately failed to earn a high school diploma. (R. at 279–84). Indeed, the ALJ's opinion makes no mention of the educational records. In discussing Weathers' alleged mental impairments, the ALJ considered Dr. Spellman's reports and Weathers' testimony. (R. at 16–22). The ALJ noted that Weathers understood questions and communicated appropriately at the hearing. (R. at 19). The ALJ held that Weathers had no severe mental impairments. (R. at 21). The ALJ stated that significant evidentiary weight was given to Dr. Spellman's reports, yet adopted none of Dr. Spellman's diagnoses or limitations. (R. at 22, 420–25, 434–37).

The ALJ noted that Weathers has not used psychotropic medications nor has she sought mental health treatment. (R. at 16). The Commissioner notes that a lack of treatment can be considered as evidence that a claimant does not have a mental

impairment. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). While this is a correct statement of the law, Weathers claims mental impairment based on learning disabilities. A learning disability or borderline intelligence is not a condition responsive to medication but a permanent condition that requires lifelong support. Inclusion Europe & Mental Health Europe, *Mental Illness and Intellectual Disability*, http://digitalcommons.ilr.cornell.edu/gladnetcollect/276. The educational records also show that Weathers received special consideration and support during her time in school, undercutting the ALJ's assertion that no evidence shows that Weathers has received treatment. (R. at 279–84).

Furthermore, the ALJ recounted Weathers' duties as filling bags with chicken and packing the filled bags into boxes. (R. at 23). However, Weathers testified that she was unable to keep pace with that job and was subsequently shifted to assembling boxes, where she was again told that her pace as too slow. (R. at 52–53). The ALJ made no mention of this testimony in his decision.

The ALJ's primary reason for rejecting Weathers' claims of mental impairment seems to be her demeanor at the hearing, where the ALJ observed that "she appeared to have a very good command of vocabulary" and a "seemingly good understanding of medical terms and previous treatments received" that "[o]ne would not readily expect" from a mentally impaired individual. (R. at 24). The Eighth Circuit has decried the use of "sit and squirm" tests in evaluating a claimant's complaints of pain, as "[a]ny system of administrative adjudication which would attach determinative weight to appearances would be fraught with the potential for manipulation because outward manifestations of pain can easily be contrived by a calculating claimant, or suppressed by a hardy claimant." *Cline v. Sullivan*, 939 F.2d 560, 568 (8th Cir. 1991). Similar reasoning should

apply to mental impairments, which are often not evident from appearances. Here, the ALJ seems to have based his findings on his own opinions rather than medical evidence, which is not permissible under the law. *Pate-Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009).

## IV.   Recommended Disposition

The ALJ failed to consider the evidence of Weathers' mental impairments and improperly substituted his own opinion for medical findings. The ALJ's decision is therefore not supported by substantial evidence on the record as a whole. For these reasons, the undersigned magistrate judge recommends REVERSING and REMANDING the decision of the Commissioner with instructions to develop the record as necessary and to fully consider all the evidence of record.

It is so ordered this 30th day of October, 2017.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE